NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


CHARLES ROBINSON,                     :

       Plaintiff,      :

                                 Civil Action No. 04-3505(JWB)
     v.                            :

                                  **O P I N I O N**
COMMISSIONER OF SOCIAL            :
SECURITY,
                            :

       Defendant.            :
                            :


**APPEARANCES**:

    LANGTON & ALTER
    By:  James H. Langton, Esquire
    2096 St. Georges Avenue
    P.O. Box 1798
    Rahway, New Jersey  07065
    (Attorneys for Plaintiff)

    CHRISTOPHER J. CHRISTIE
    United States Attorney
    By:  Peter S. Krynski
         Special Assistant U.S. Attorney
    Social Security Administration
    Office of General Counsel
    26 Federal Plaza, Room  3904
    New York, New York  10278-0004
    (Attorney for Defendant)

**BISSELL**, Chief Judge

    This case comes before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security, which denied Plaintiff Charles Robinson's request for Supplemental Security Income ("SSI") payments under

the Social Security Act, 42 U.S.C. § 423, et seq.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).  For the reasons set forth, due to the ALJ's failure to fully explain her findings this Court remands this case to the Commissioner for further proceedings consistent with this Opinion.

**FACTS AND PROCEDURAL HISTORY**

**I.   Parties**

Plaintiff Charles Robinson ("Plaintiff" or "Robinson"), is a resident of New Jersey who alleges that he has been disabled due to neurological and psychiatric conditions.  (Compl. ¶¶ 2, 5.)

Defendant Commissioner of the Social Security Administration (the "Commissioner") is charged with the Administration of the United States Social Security Act.  (Id. ¶ 3.)

**II.   Background and Prior Proceedings**

On March 27, 2002, Robinson filed an application for SSI payments alleging disability beginning June 7, 1999.  (Admin. Rec. at 119-21.)  His application for SSI payments was denied initially and on reconsideration.  (Id. at 100-02.)  Robinson requested a hearing before an Administrative Law Judge for de novo review and a hearing was held on October 8, 2002 before Administrative Law Judge Michail L. Lissek ("ALJ Lissek").  (Id. at 107.)

On August 21, 2003, ALJ Lissek determined that Robinson was

not eligible for SSI payments under 1614(a)(3)(A) of the Social Security Act.  (Id. at 18.)  The grounds for this decision were:

1. [Plaintiff] has not engaged in substantial gainful activity since June 7, 1999, the alleged onset date[;]

2. The medical evidence establishes that the [Plaintiff} has "severe" epileptic seizures, but does not establish medical findings, which 'meet' or 'equal' in severity the clinical criteria of any impairment listed in the Listings of Impairments, Appendix 1, Subpart P, Regulations No. 4.  His other alleged medical impairments are 'not severe' in nature[;]

3. The [Plaintiff's] subjective allegations including severe pain and other symptoms are not credible, not consistent with the medical evidence and not supported by the evidence of record[;]

4. [Plaintiff] has the residual physical functional capacity for a full range of exertional work activity, across all exertional levels, subject to non-exertional environmental limitations due to a history of seizures[;]

5. [Plaintiff] has had unskilled past relevant work experience in the last 15 years[;]

6. [Plaintiff] does not retain the residual physical functional capacity to return to his past relevant work[;]

7. [Plaintiff] is presently 31 years of age, which is defined as a 'younger person', he has completed a high school education and he has had unskilled past relevant work experience[;]

8. Based upon the [Plaintiff's] residual functional capacity for a full range of exertional work activity subject to non-exertional environmental limitations, due to a history of seizures, as well as the vocational factors of his age, education and work experience, the 'framework' of Section 204.00, Appendix 2, Subpart P, Regulations No. 4, used as a guide for decisionmaking, directs a

>          conclusion of 'not disabled'[;]
>
> 9.  [and Plaintiff] has not been under a 'disability', as defined in the Social Security Act, as amended, since June 7, 1999.

(Id. at 17-18.)  Robinson requested a review by the Appeals Council which was denied by action of the Appeals Council dated May 27, 2004.  (Id. at 3-5.)  Robinson thereafter filed a complaint with this Court claiming that ALJ Lissek's and the Appeal Council's affirmation of that decision were clearly erroneous in law and fact.  (Compl. ¶ 9.)

### A.  Medical and Non-Medical Evidence

At the time of the hearing Robinson was thirty-one years old, with a high school education and unskilled work experience. (Admin. Rec. at 14, 17.)  Robinson's prior work experience included working as a laborer for chemical company, a laborer for a food plant, a package loader for the Fed-Ex Company, a construction laborer and a yard worker for an ambulance dealership.  (Id. at 17.)  Robinson claimed that he became disabled on June 7, 1999 due to consequences following an assault with a baseball bat.  (Id.)  In particular, Robinson was hosptitalized for treatment of head trauma, a skull fracture, a subarachnoid hemorrhage, a subdural hematoma and left hemi-paresis.  (Id.)  In addition, Robinson developed recurrent seizures, headaches and dizziness with the loss of balance and falling, double vision, difficulty concentrating, memory loss and

attempted to commit suicide twice.  (Id. at 14, 15, 23.)

    Dr. Martin Fechner ("Dr. Fechner"), an independent medical expert, board certified in internal medicine testified at Robinson's hearing.  (Id. at 15.)  Dr. Fechner reviewed Robinson's entire medical record and concluded that Robinson had not exertional strength limitations[1] and that he was able to perform heavy work.[2]  (Id. at 16, 46, 25.)  Robinson conceded that he had no exertional limitations, but argued that he did have non-exertional limitations.[3]  (Id. at 25.)  ALJ Lessik agreed with Robinson and found that he had non-exertional limitations due to possible seizures which would preclude him from working at heights, climbing and working near hazardous machinery.  (Id. at 16, 45-46, 209, 357.)  Ultimately, ALJ Lessik concluded that Robinson retained the residual functional capacity to perform the full range of exertional work activity with non-exertional environmental limitations in climbing and the need to

---

    [1]    Exertional limitations affect the capacity to perform the strength demands of jobs including sitting, standing, walking, pushing, pulling and lifting.  20 C.F.R. § 416.969a(b).

    [2]    Heavy work involves lifting no more than one hundred pounds at a time with frequent lifting or carrying of objects weighing up to fifty pounds or more.  If somone can complete heavy work, he/she can also complete medium, light and sedentary work.  20 C.F.R. § 416.967(d).

    [3]    Non-exertional limitations affect the non-strength demands of work including manipulative, postural, environmental, visual, auditory and mental functioning.  20 C.F.R. § 416.969a(c).

avoid hazardous conditions due to the potential of seizures. (Id. at 16.)

Medical records dated October 10, 2001 through January 2, 2002, demonstrate that Robinson developed recurrent seizures as a result of his head injury. (Id. at 191-219.) In addition, medical entries state that Robinson's Dilantin (an anti-convulsant) blood levels were sub-therapeutic on multiple occasions. (Id.) Further, clinic notes indicate that Robinson was not taking his anti-convulsant medications as prescribed. (Id.) During the period from 2000 to 2003, Robinson required emergency medical care in the following amounts: 2000 (7 times), 2001 (8 times), 2002 (8 times). (Id. at 374-94.) From July 24, 2002 through April 4, 2003, Robinson sought treatment for his seizure disorder, the entries indicate that his Dilantin blood levels were low and that he wan non-complaint with medication. (Id. at 360-73.) Moreover, although Robinson denied substance and alcohol abuse, the medical record shows positive screening for cocaine. (Id. at 206-19, 220-342.) In addition, Robinson's complaints of double vision were not supported by Dr. Materna, a consultative ophthalmologist, who determined that Robinson maintained normal corrective vision for distance and near vision. (Id. at 349-51.) Also, while Robinson required emergency medical care on several occasions from 2000-2002, it is not conclusive from the record that he experienced actual epileptic seizures.

(Id. at 374-94.)

Additionally, Dr. Fechner found no evidence that Robinson suffers from memory loss.  Dr. Fechner determined that Robinson's suicide ideation subsided, referring to segments of the record which so indicated.  Accordingly, Dr. Fechner concluded that Robinson's alleged seizure disorder and other alleged symptoms did not meet the requirements of the listing of impairments because his symptom are not sufficiently severe.  (Id. 78-83.)

**B.    Robinson's Present Claim**

Robinson specifically argues that the Commissioner's decision is unsupported by substantial evidence in the record. (Pl.'s Br. at 4.)  Plaintiff argues that ALJ Lessik improperly evaluated the medical evidence, minimized his non-exertional impairments, and lacked substantial evidence to conclude that he retained residual capacity for the full range of medium exertion level work.  (Id. at 4-15.)  Robinson therefore requests that this Court reverse ALJ Lissek's decision to deny him SSI payments.  (Id. at 4.)

### DISCUSSION

**I.    District Court's Scope of Review**

Findings of fact by the ALJ must be accepted as conclusive by a reviewing court if they are supported by substantial evidence.  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) (citing Lewis v. Califano, 616 F.2d 73, 76 (3d Cir. 1980) and 42

U.S.C. § 405(g)). "Substantial evidence is such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." Id. A finding of substantial evidence necessitates "more than a mere scintilla of evidence but less than a preponderance." Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).

In reviewing the decision of the ALJ, the Court "need[s] from the ALJ not only an expression of the evidence [he or she] considered which supports the result, but also some indication of the evidence which was rejected." Cotter, 642 F.2d at 705 ("In the absence of such an indication the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."); see also Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001) (collecting cases in support of this proposition). However, in deciding whether the ALJ's decision is supported by substantial evidence, the Court may not weigh the evidence or substitute its judgment for that of the ALJ, even if the Court might have reached a different conclusion. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). If the record, read as a whole, would allow a reasonable mind to accept the conclusions reached by the ALJ, the Court must uphold his or her determination. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal citation omitted). Therefore, if the ALJ's decision is

supported by substantial evidence, it must be affirmed.  42 U.S.C. § 405(g); Richardson, 402 U.S. at 401.

**A.   Statutory and Regulatory Standard for Disability**

To meet the disability requirement of 42 U.S.C. § 423(d), a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . had lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An impairment is not disabling unless it is of such severity that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience engage in any other kind of substantial gainful work . . . in the national economy."  42 U.S.C. § 423(d)(2)(A). To prove the existence of a disability, a claimant must present evidence that his condition "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

An ALJ considering a claim for SSI payments must undertake a five-step sequential evaluation process, which is set forth in 20 C.F.R. § 404.1520.  First, if the claimant is working and the work constitutes substantial gainful activity, the ALJ must find that the claimant is not disabled regardless of his medical condition, age, education or work experience.  20 C.F.R. §

404.1520(b).  Second, the ALJ must determine whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activity.  20 C.F.R. § 404.1520(c).  Third, if a severe medical impairment is present and matches an entry on the list of impairments set forth in 20 C.F.R. part 404, subpart 4, app. 1, the ALJ must enter a finding of disability without further consideration.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's severe medical impairment is not listed in 20 C.F.R. part 404, subpart 4, app. 1 and the ALJ finds that the claimant retains the residual functional capacity to perform past relevant work, the ALJ must find that the claimant is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if, however, the claimant cannot perform past relevant work, the ALJ must consider other factors including the claimant's residual functional capacity, age, education and past work experience to determine if the claimant can perform other work in the national economy.  20 C.F.R. § 404.1520(f).

**A.   Review of ALJ Lessik's Evaluation**

ALJ Lessik decided that Robinson was not disabled within the meaning of the Social Security Act.  In making this determination, the ALJ followed the required five-step sequential evaluation.  (Adimin. Rec. at 13-17.)

The first step of the evaluation required a determination of whether Robinson was engaged in a Substantial Gainful Activity

("SGA"). (Id. at 13-14.) ALJ Lessik determined that Robinson had not engaged in disqualifying SGA since his medical condition made him stop working on June 7, 1999. (Id. at 13.) In the second step, the ALJ determined whether Robinson had a "severe" impairment.[4] In making his determination he reviewed Robinson's testimony and the medical evidence in the record. (Id. at 14-18.) ALJ Lissek concluded that the evidence supported a finding that Robinson "has a neurological impairment which imposes more than minimal restrictions on his ability to tolerate exposure to certain work hazards, and therefore, constitutes a 'severe' medical impairment." (Id.)

The third step required that ALJ Lissek determine whether Robinson had an impairment which meets the criteria of any listed impairments described in Appendix 1 of the Regulations. The ALJ found that Robinson "does not have an impairment or combination of impairments which 'meet' or 'equal the level of severity and duration and the clinical criteria of any impairment listed in the Listing of Impairments[.]" Listing 11.02 and 11.03, which apply to neurological impairments, requires a plaintiff to have:

---

[4] A severe impairment is defined as an impairment or combination of impairments which significantly limit (has more than a minimal effect on) an individual's ability to perform basic work activities. See 20 CFR § 416.920(c). The impairment must either be expected to result in death or last continuously throughout one year. 20 CFR § 416.909.

> 11.02    Epilepsy-convulsive epilepsy, (grandmal or
>          pyschomotor), documented by detailed
>          description of a typical seizure pattern,
>          including all associated phenomena; occurring
>          more frequently than once a month in spite of
>          at least 3 months of prescribed treatment.
>          With:
>
> A.   Daytime episodes (loss of consciousness and
>      convulsive seizures) or
>
> B.   Nocturnal episodes manifesting residuals which
>      interfere significantly with activity during the
>      day.
>
> 11.03    Epilepsy-nonconvulsive epilepsy (petitmal,
>          psychomotor, or focal), documented by
>          detailed description of a typical seizure
>          pattern, including all associated phenomena;
>          occurring more frequently than once weekly in
>          spite of at least 3 months of prescribed
>          treatment.  With alteration of awareness or
>          loss of consciousness and transient postictal
>          manifestations of unconventional behavior or
>          significant interference with activity during
>          the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.02, 11.03.  Furthermore, the Supreme Court of the United States has articulated that "[f]or a [plaintiff] to show that his impairment matches a listing, it must meet all of the specified criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

In the instant case, Robinson did not establish that he had medical impairments that rise to the level of severity of the Listing of Impairment, because he did not show that he experienced a seizure more frequently than once a month in spite

-12-

of at least three months of prescribed treatment as indicated in Listing 11.02.  Nor did Robinson provide evidence to establish that he experienced a seizure more frequently than once weekly in spite of at least three months of prescribed treatment as indicated in Listing 11.03.  Furthermore, the medical notes indicate that Robinson did not consistently medicate as advised and prescribed.  Moreover, clinical notes indicate that Robinson's use of alcohol and narcotics may have caused him to experience "breakthrough" seizures.  Thus, Robinson's seizures did not satisfy the frequency required in Listings 11.02 and 11.03 and some may have been caused due to his failure to follow his doctor's orders to medicate and refrain from alcohol consumption.

At the fourth step of the sequential evaluation, ALJ Lissek addressed whether Robinson retained the residual functional capacity to return to past relevant work.  The ALJ concluded that Robinson "retains the ability to perform the full range of exertional work activity subject to non-exertional environmental limitations ."  (<u>Id.</u> at 15.) Robinson contends that ALJ Lissek failed to provide sufficient analysis of Robinson's non-exertional impairments to determine his residual functional capacity.  Robinson, however, does not provide or cite to evidence in support of his claim that he has a more restrictive residual functional capacity.

In addition, Robinson's contention that ALJ Lissek overlooked evidence, and that her analysis with regard to his residual functional capacity is incorrect, is without merit. An ALJ is not required to adhere to particular language or format in determining a claimant's residual functional capacity. See Burnett v. Comm'r of Social Security, 220 F.3d 112, 121 (3d Cir. 2000). Rather, an ALJ is required to demonstrate that there is sufficient development of the record and explanation of findings to conclude a meaningful review. Jones v. Barnhart, 364 F.3d 501, 505. (3d Cir. 2004). Here, ALJ Lissek's decision, read in its entirety, along with the medical record and other evidence demonstrates sufficient development of the record and an adequate explanation of findings. Thus, contrary to Robinson's argument, there was substantial medical evidence for the ALJ's finding that he retained residual functional capacity and her decision was fully explained.

Robinson also argues that ALJ Lissek failed to properly assess his subjective complaints when concluding that he was not disabled. A plaintiff's subjective complaints, however, must be evaluated against the objective medical evidence and other relevant evidence. 20 C.F.R. § 416.929(a),(c)(4). Subjective complaints cannot be the only basis for finding a disability. 42. U.S.C. 1382c(a)(3)(A). Objective medical evidence may include physicians' clinical findings, observations, treatment

-14-

and the plaintiff's medication.  20 C.F.R. § 416.929(c)(3).

In the present matter, the record demonstrates that ALJ Lissek considered Robinson's subjective complaints in conjunction with the objective medical evidence regarding memory loss, headaches, dizziness, double vision and two suicide attempts. The record indicates that Robinson's treating and examining physicians agreed that he should be precluded from climbing ladders and scaffolds, and from working at unprotected heights and near hazardous machinery.  Further, medical experts did not conclude that Robinson's condition precluded him from completing any type of work.  Moreover, Dr. Fechner testified that Robinson's complaints of frequent and disabling headaches were out of proportion and unsupported by medical evidence.  Thus, ALJ Lissek properly evaluated Robinson's subjective complaints in conjunction with objective medical evidence to support his conclusion that Robinson was not disabled.

Robinson also asserts that ALJ Lissek's conclusion that Robinson's seizure disorder resulted in non-exertional limitations, but was able to complete heavy work is incorrect because she failed to call medical vocational expert to testify. Specifically, Robinson contends that only a vocational expert has the ability to determine whether jobs at the medium exertional level would accommodate his restrictions.  "[I]n the absence of evidence in addition to the guidelines . . . the Commissioner

-15-

cannot establish that there are jobs in the national economy that someone with the claimant's combination of impairments can perform." Sykes v. Apfel, 228 F.3d 259, 273 (3d Cir. 2000).  In Sykes, the Third Circuit held that it was not sufficient to rely on the Medical-Vocational Grids alone; the testimony of a vocational expert or other similar evidence, such as a learned treatise was required.  Id.  The Third Circuit, however, explicitly stated that they were not deciding whether "Social Security Rulings can serve the same function as the rulemaking upheld in Campbell[5], for the ALJ did not attempt to rely on these rulings to support [their] conclusion. . .." Sykes, at 271.[6]

Defendant argues that the ALJ's reliance on the grids along with SSR 85-15 and 83-14 formed a substantial basis for her decision that there were jobs in the national economy that

---

[5]   In Heckler v. Campbell, 461 U.S. 458 (1983), the Supreme Court recognized that "when the accuracy of those facts already has been tested fairly during rulemaking, the rulemaking proceeding itself provides sufficient procedural protection." Id. at 470.  Therefore, in that case, reliance on the grids to establish the presence of jobs in the national economy for claimants who have exertional impairments comported with the requirements of official notice.  Campbell, 461 U.S. 458.

[6]   In a footnote, the Third Circuit referred to Christensen v. Harris County, 529 U.S. 576 (2000).  In Christensen the Supreme Court held that an agency's statements of policy through opinion letters, enforcement guidelines, or similar materials do not have the force of law if they have not been formulated through formal adjudication or through notice-and-comment rulemaking.  Sykes, at 271 n.14.  (summarizing Christensen v. Harris County, 529 U.S. 576 (2000)).  The Supreme Court noted that the statements may have the "power to persuade".  Id.

Plaintiff could perform.  SSR 85-15 provides that "restrictions against unprotected elevations and proximity to dangerous moving machinery are not significant at all exertional levels"  SSR 85-15.  Defendant also relies on the Acquiescence Ruling ("AR") 01-1(3) issued by the Social Security Administration after Sykes v. Apfel.[7]  Defendant suggests that because the ALJ relied on SSR 85-15 she properly determined that there were a significant number of jobs available in the national economy which Plaintiff could perform.  AR 01-1(3) provides in relevant part:

> Under our interpretation of 20 CFR 404.1569a, 416.969a and section 200.00(e) of Appendix 2 to Subpart P of Part 404, and of SSR 83-14, we are not required to consult a vocational expert or other vocational resource in all instances in which we decide whether an individual who has a nonexertional limitation(s) is or is not disabled.  For instance, we are not always required to consult a vocational expert or other vocational resource to help us determine whether a nonexertional limitation significantly erodes a claimant's occupational base when adjudicative guidance on the effect of the limitation is provided in a SSR.
> 
> * * * * *
> 
> In making a disablity determination or decision at step [5] of the sequential evaluation process (or the last step in the sequential evaluation process in continuing disablity review claims), we cannot use the grid rules exclusively as a framework for [decisionmaking] when an individual has a nonexertional limitation(s).  Before denying disablity benefits at step five when a claimant has a nonexertional limitation(s), we must:
> 
>     (1) take or produce vocational evidence such as from a

---

[7] Defendant cites to a 2001 Delaware District Court case which discusses the Sykes decision and the subsequent AR.  Def. Br. at 22 n.7.  In Edley v. Apfel, 2001 WL 641749 (D.Del. 2001), the Court remanded the case for further proceedings, inter alia, because the ALJ failed to identify any SSRs identifying jobs for claimants with similar limitations.

> vocational expert, the DOT or other similar evidence (such as a learned treatise); or
>
> (2) provide notice that we intend to take or are taking administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational job base, and allow the claimant the opportunity to respond before we deny the claim.
>
> This Ruling does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base.  When we rely on such an SSR to support our finding that jobs exist in the national economy that the claimant can do, we will include a citation to the SSR in our determination or decision.

<u>Sykes v. Apfel; Using the Grid Rules as a Framework for Decisionmaking When an Individual's Occupational Base is Eroded by a Nonexertional Limitation - Titles II and XVI of the Social Security Act</u>, 2001 WL 65745, at *4 (S.S.A. Jan. 25, 2001).

The ALJ reported that because of his non-exertional impairments, Plaintiff is precluded from climbing ladders and scaffolds, and from working at unprotected heights and around hazardous machinery.  The rulings that the ALJ relies on, SSR 85-15 and 83-14, refer to these same conditions.  SSR 85-15 and 83-14.  The ALJ issued a blanket statement, relying solely on SSR 85-15 and 83-14.  Accordingly, the Court finds that the ALJ either did not consult all the relevant vocational evidence or, if he did so, failed to so indicate on the record.  The Court, therefore, remands the case to the Commissioner for further proceedings consistent with this ruling.

**CONCLUSION**

Due to the ALJ's failure to fully explain her findings in step five this Court remands this case to the Commissioner for further proceedings consistent with this Opinion.


/s/    John W. Bissell
JOHN W. BISSELL
Chief Judge
United States District Court


DATED:  August 30, 2005